UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GENERAL MEDICINE, P.C.,
A Michigan professional corporation,

     Plaintiff,

-vs-                             Case No.
                                   MAC Docket No.   M-12-655
                                   ALJ Appeal No.  1-705153517


TOM PRICE, in his official capacity
as Secretary of the U.S. Department of
Health and Human Services,

     Defendant.
_____/
Joel H. Serlin (P20224)
Barry M. Rosenbaum (P26487)
David Hansma (P71056)
Attorneys for Plaintiff
2000 Town Center, Suite 1500
Southfield, MI  48075
(248) 353-7620
_____/

## **COMPLAINT**

     NOW COMES Plaintiff General Medicine, P.C., by and through its attorneys, Seyburn, Kahn, P.C., and states the following:

     1.    Plaintiff General Medicine, P.C. is a Michigan corporation with its principal office located in the City of Novi, County of Oakland, in the Eastern District of Michigan of the United States District Court.

2.     Defendant Tom Price is the current Secretary of the Department of Health and Human Services.

3.     Jurisdiction is based upon 42 U.S.C. §405 providing for judicial review of the final decision of the Secretary.

4.     Venue is based upon 42 C.F.R. §405.1136(b) because Plaintiff has its principal place of business in the Eastern District of Michigan.

5.     The amount in controversy exceeds the sum of $1,000,000.00.

6.     The review is sought from a decision of the Medicare Appeals Council dated June 21, 2017 and received on June 26, 2017.

7.     In 2005, AdvanceMed, a CMS contractor, initiated a review of services rendered by Plaintiff to Medicare beneficiaries residing in rehabilitation and nursing facilities in Ohio.

8.     As part of that review, AdvanceMed requested copies of large sections of the medical records and charts of the beneficiaries from certain facilities; a copy of one such request being attached hereto as Exhibit A.

9.     Plaintiff was not notified in 2005 that CMS was conducting a review of the services that Plaintiff had provided or that CMS was requesting medical records from the facilities where Plaintiff was providing services.

10.    Plaintiff was not notified that it was the subject of an audit until January 2, 2007, when AdvanceMed notified Plaintiff that CMS had determined

that Plaintiff had been overpaid for services rendered in the amount of $1,836,646.56, based on an extrapolation of the audit sample.

11.    Plaintiff immediately began the process of appealing the overpayment to Defendant.

12.    During the course of proceedings before the ALJ, the overpayment was reduced on remand to the QIC to $1,073,183.00.  Plaintiff has since paid in excess of $2,000,000.00 to CMS due to apparent errors in crediting the repayments of the overpayment.

13.    During the original proceedings before the ALJ, Plaintiff objected to the fact that the medical records reviewed by CMS and the QIC were incomplete. Plaintiff had been allowed to review the records at the offices of the ALJ, and discovered that many of the records requested by CMS in 2005 had never been provided to CMS by the facilities.

14.    Plaintiff's practice is facility-based and while Plaintiff keeps a record of its physician and nurse practioner progress notes, it does not keep a duplicate copy of the facilities' medical records, such as lab results, diagnostic test results, nurses' notes, etc., all of which had been requested by AdvanceMed in 2005.

15.    Plaintiff had also requested these records from the facilities once the audit was disclosed, but the facilities did not respond to Plaintiff's requests.

16.    Plaintiff requested that the ALJ order the QIC to obtain **all** relevant

medical records for all of the beneficiaries in the audit sample, and on May 11, 2009, the ALJ entered such an order (See Exhibit B attached hereto).

17.     However, the QIC did not obey the ALJ's order and no additional medical records were ever produced.

18.     After several remands to the QIC, the ALJ held a hearing in 2010 in which it invalidated the sample and extrapolation.

19.     CMS requested that the MAC review the ALJ's decision and the MAC ultimately reversed the ALJ, and remanded the matter to the ALJ for additional hearings on the validity of the sample.

20.     On remand, the ALJ found the sample to be valid and made factual findings on the services rendered to the beneficiaries that mirrored to the letter the findings of the QIC.

21.     On or about January 4, 2012, Plaintiff asked the MAC to review the ALJ's decision.  The decision of the MAC is attached hereto as Exhibit C.

22.     In its decision, the MAC addressed several legal arguments that Plaintiff raised regarding the validity of the sample and the procedural aspects of the ALJ hearing, as well as making its own factual findings regarding the specific claims included in the sample.

23.     Plaintiff is not challenging the MAC's factual findings on the claims involved in the sample.  However, Plaintiff is challenging the legal and procedural

errors that were committed by the ALJ, and which prejudiced the factual findings made by the MAC in its decision.

24.    §1833(e) of the SSA [42 U.S.C. §13951(e)] requires providers to furnish "such information as may be necessary" in order to determine the amounts due to the provider for services rendered to Medicare beneficiaries.

25.    This section does not define what documentation must be furnished, nor does it require a provider to maintain such documentation in its possession.

26.    Plaintiff did retain possession of its progress notes and those were provided to the QIC, ALJ and the MAC.

27.    However, it is Plaintiff's position that its progress notes alone for the dates of service in question are insufficient to support the billings for the services rendered.

28.    This view is shared by CMS which requested all of the records listed on Exhibit A from the facilities, and which should have been provided to CMS per the request of March 4, 2005.

29.    Plaintiff confirmed that not all of the records requested by CMS had been provided by the facilities and, as a result, the ALJ ordered the QIC to obtain all of the records as part of the directions on remand (Ex. B).

30.    The QIC did not obey the order of the ALJ and the MAC did not have the benefit of the additional medical records when it made its *de novo* review.

31.     Furthermore, the MAC took the position, without any legal authority in support, that the only relevant records to be reviewed were the physicians' progress notes for the date of service, which it already had.  The MAC held that a review of the full medical records would be unnecessary.

32.     The MAC committed legal error when it based its payment decisions only on the physician progress notes for the dates of service as opposed to reviewing other medical records that are reasonably contemporaneous to the dates of treatment, at the request of the provider.

33.     The MAC compounded that error by reading §1833(e) of the Social Security Act [42 U.S.C. 13951(e)] to require the provider to provide the ancillary medical records, even when such records are not in the possession of the provider.

34.     The issue in this case is not whether the ALJ should have granted Plaintiff's request for a subpoena of the medical records at the facilities, but whether the ALJ erred in not enforcing its Order of Remand that required the QIC to obtain those records pursuant to 42 C.F.R. §405.1034(a)(1).

35.     The MAC erred in not ordering a remand back to the QIC to obtain the medical records that CMS originally requested from the facilities in 2005, and which were never produced.

36.     The additional medical records would have provided the necessary support for Plaintiff's billings.

37.    §1893(f)(7)(A) [42 U.S.C. §1395ddd(f)(7)(A)] **requires** a medicare contractor to provide **written** notice of the intent to conduct a post-payment audit.

38.    It is undisputed that CMS failed to provide any written notice of the audit to Plaintiff; this fact having been conceded by CMS before the ALJ and having been found to be true by the ALJ.

39.    It is also undisputed that the first written notice of the audit received by Plaintiff was the notice of overpayment.

40.    Furthermore, it is undisputed that the exception to the written notice requirement does not apply to the audit in this case.

41.    Both the ALJ and the MAC determined that the aforementioned regulation contains no sanction for the failure to provide notice and both the ALJ and the MAC found that Plaintiff had suffered no prejudice by the failure to receive notice of the audit.

42.    In fact, Plaintiff was prejudiced by the failure to receive any notice of the audit for nearly two years.

43.    Two of Plaintiff's physicians who provided nearly 60% of the services being audited had left Plaintiff's employ between 2005 when the audit was initiated and 2007 when notice was provided.

44.    Plaintiff could have preserved their testimony and had them supplement or clarify their progress notes to support the billings, had Plaintiff

received notice of the audit prior to the assessment of the overpayment.

45.    Plaintiff also would have had a better opportunity to obtain the ancillary medical records from the facilities had it received the statutory notice two years earlier.

46.    The MAC erred in finding that Plaintiff suffered no prejudice in the presentation of its appeal by the failure to receive timely notice of the audit prior to the notice of the assessment of an overpayment.

47.    Plaintiff raised several errors with the sample that CMS used to determine the overpayment.  These errors include:

       a.    the absence of six of Plaintiff's clinicians who performed services on behalf of Plaintiff from the universe of claims;

       b.    the limitation of the sample to only 12 facilities served by Plaintiff, when Plaintiff performed services in 23 facilities in the geographic area; and

       c.    the fact that CMS failed to stratify the sample.

48.    These errors contributed to the invalidity of the universe which results in the invalidity of the sample.

49.    If the sample is invalid, then the extrapolation is invalid as well, and Plaintiff's liability, if any, should be limited to the actual overpayment, if one is found to exist, on remand.

{01308494.DOC }

WHEREFORE, Plaintiff requests that this Honorable Court vacate the decision of the Medicare Appeals Council and remand this matter to the QIC to issue a new reconsideration decision of the actual overpayment, after first being required to obtain all of the medical records for the three months before and after the date of service of each of the beneficiaries in the sample for which an overpayment was determined.  Plaintiff further requests that if an overpayment is determined, that CMS be barred from extrapolating the overpayment due to the errors in its sampling methodology.  In the alternative, Plaintiff would agree to entry of judgment in the amount of the actual overpayment, only as determined by the Medicare Appeals Council.

Respectfully submitted,

**SEYBURN & KAHN, P.C.**

By:/s/ Barry M. Rosenbaum (P26487)
      Joel H. Serlin (P20224)
      Barry M. Rosenbaum (P26487)
      David F. Hansma (P71056)
      Attorneys for Plaintiff
      2000 Town Center, Suite 1500
      Southfield, MI 48075-1195
      (248) 353-7620
Dated:  August 23, 2017      brosenbaum@seyburn.com