UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GENERAL MEDICINE, P.C.,

                 Plaintiff,

                                                    Case No. 17-cv-12777
v.

                                                    HON. MARK A. GOLDSMITH
ALEX M. AZAR II,

                 Defendant.

_____/

## OPINION & ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 60)

This matter is before the Court on Plaintiff General Medicine, P.C.'s motion for summary

judgment (Dkt. 60). The issues have been fully briefed. Because oral argument will not aid the

decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR

7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, Plaintiff's motion is denied.

## I. BACKGROUND

This case comes before the Court on review of the Medicare Appeals Council ("the

Council"), which issued the final decision of the Secretary of Health and Human Services. The

Council is the last layer of review in the Medicare system; denials by a Medicare Administrative

Contractor ("MAC") must first be reviewed, in order, by a request for redetermination by the

MAC, then by a qualified independent contractor ("QIC"), then by an Administrative Law Judge

("ALJ"). The Council's decision follows, and is subject to judicial review.

In 2007, the MAC notified General Medicine, who hires physicians to provide services to Medicare beneficiaries in nursing facilities, of an overpayment of $1,836,646.56. This amount was calculated following a sample of 382 claims submitted by General Medicine. Of those, 314 claims were denied – 238 as not medically necessary – and 33 were allowed at different levels than billed. The overpayment sample was $16,778.80, which was then extrapolated to determine the amount of the overpayment. On redetermination, the overpayment was adjusted to $1,836,114.62. The QIC issued its decision on General Medicine's reconsideration request on September 13, 2007, with favorable decisions on claims in the sample that were adequately supported by the documentation, and unfavorable decisions on claims that either lacked sufficient documentation to establish that the services were provided at all or that they were provided on the date of service billed.

The process concluded following a lengthy back-and-forth between the ALJ and the Council. Relevant to this appeal is the ALJ's December 17, 2009 interim decision concluding that the Center for Medicare and Medicaid Services ("CMS") did not provide complete notice of the audit, but holding that there was no evidence that any lack of notice "caused any detriment to [General Medicine] or adversely affected the validity of the sampling or the audit" and resulted in no harm to General Medicine. 12/17/2009 ALJ Order at 11, PageID.3196 (Dkt. 15-1). In a November 28, 2011 opinion, the ALJ rejected General Medicine's argument that it lacked the necessary documentation to render a decision on the sampled claims. See 11/28/2011 ALJ Order at PageID.787-788 (Dkt. 11).

The Council issued its final decision on June 21, 2017, agreeing with the ALJ's decision validating the sample methodology. See 6/21/2017 Council Decision, Ex. A to Mot. (Dkt. 60-2). Regarding notice, the Council upheld the ALJ's decision, determining that it was not "entirely

certain" that General Medicine was "totally without reasonable notice" of the audit, but that, regardless, the notice received did not compromise General Medicine's ability to present its case. Id. at 21. Regarding the documentation, the Council determined that it was General Medicine's responsibility to keep its own files, and thus that the ALJ was not required to subpoena any of those documents. Id. at 19. The Council ultimately upheld most of the claims, while remanding to the ALJ to recalculate the overpayment based on its findings.

General Medicine is not challenging any factual findings; rather, it only challenges the decision that it was not prejudiced by either the lack of notice of the audit or by the ALJ's refusal to issue subpoenas for additional medical records.

As to notice, the Council determined that "we do not see that [General Medicine] was irreparably harmed by the lack of formal notice of the pending audit. Nor are we entirely certain that [General Medicine] was totally without reasonable notice or at least notice similar to that which it received in connection with the 2002 audit." 6/21/2017 Council Decision at 21. It continued:

> As the ALJ noted, while affording a party a right to notice of an audit, the Act does not address the consequences of failing to provide such notice. Moreover, the Act does not even go so far as to indicate the timing of such notice. See generally Act, § 1893(f). Additionally, [General Medicine] has, over these many years, ably and thoroughly argued the principal issues resulting from the audit, the validity of the sampling methodology, and the coverage of the reviewed claims. We see no area where the form of notice which [General Medicine] received compromised its ability to present its case.

Id. at 21-22.

As for the subpoenas, General Medicine argued to the Council that it is a facility-based practice that does not maintain its own set of patient records. According to General Medicine, the facility was uncooperative in providing records, and thus the ALJ needed to use its subpoena power to have a full record. The Council found against General Medicine, initially noting that "since the

3

nursing homes where [General Medicine's] physicians practiced were not parties to this action, it is not clear the extent to which the ALJ has the authority to subpoena medical records in their possession." 6/21/2017 Council Decision at 18. Regardless, the Council ruled that the "need to keep medical documents supporting an E&M [evaluation and management] service furnished by one of [General Medicine's] physicians is the responsibility of [General Medicine] since the [General Medicine] billed for those services," and thus the subpoena covered documents that should have already been in General Medicine's files. Id. at 19. The Council continued that to "the extent that [General Medicine] was seeking to obtain nursing facility records that were created by nursing facility personnel, the Council does not find that issuing subpoenas to obtain those documents would ultimately [make] a material difference in the claims' adjudication here." Id. According to the Council, the E&M services provided by General Medicine must stand alone, so no further context was necessary beyond documentation that General Medicine should have properly had in its possession. Accordingly, the Council found "that [General Medicine] was not disadvantaged by not having the nursing homes' complete records obtained and entered into the record." Id. at 20.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court has authority to review the Secretary's decision, as promulgated by the Council. "Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards." Cutlip v. Sec'y of Health and Human Services, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

## III. ANALYSIS

### A. Notice

Neither party cites any specific caselaw regarding the notice issue, instead relying on canons of statutory interpretation that courts must give credence to every word of a statute. General Medicine observes that written notice for post-payment audits is required by statute, and that the purpose of this provision is "to allow the provider of services an opportunity either before or during the audit to reach a settlement with CMS, provide additional information, or take steps to prepare to contest the findings." Pl. Mot. at 8 (Dkt. 60). General Medicine acknowledges that the statute does not provide for a specific sanction for the failure to provide notice, but argues that it was harmed by its inability to provide input before the extrapolation decision was made. Id. at 9. In its reply, General Medicine further argues that prejudice should be presumed. Pl. Reply at 2 (Dkt. 65). In turn, the Government argues that General Medicine has not provided any evidence that it was harmed by the notice it received, and that its argument that a remedy is required actually adds words to the statute rather than applies it faithfully. Def. Resp. at 13-14 (Dkt. 64).

It is axiomatic that "[e]very word in the statute is presumed to have meaning, and [courts] must give effect to all the words to avoid an interpretation which would render words superfluous or redundant." Riley v. Kurtz, 361 F.3d 906, 913 (6th Cir. 2004). Here, the statute provides:

> Subject to subparagraph (C), if a medicare contractor decides to conduct a post-payment audit of a provider of services or supplier under this subchapter, the contractor shall provide the provider of services or supplier with written notice (which may be in electronic form) of the intent to conduct such an audit.

42 U.S.C. § 1395ddd(f)(7)(A). Subparagraph (C) is not applicable to this case.

The Council decided that it did not "see that [General Medicine] was irreparably harmed by the lack of formal notice of the pending audit." 6/21/2017 Council Decision at 21. Indeed, the Council noted, it was not "entirely certain that [General Medicine] was totally without reasonable

notice or at least notice similar to that which it received in connection with the 2002 audit." Id. The Council further observed that "the Act does not address the consequences of failing to provide" the required notice, and that General Medicine "has, over these many years, ably and thoroughly argued the principal issues resulting from the audit, the validity of the sampling methodology, and the coverage of the reviewed claims." Id. at 21-22. For these reasons, the Council denied General Medicine's claim as it related to notice.

As it relates to this appeal, General Medicine has not met its burden to necessitate overturning the Council's decision. To begin, the Council is correct that the statute, despite creating a right to notice, does not prescribe a remedy when that right is violated. General Medicine requests a reversal of the Council decision, which ultimately amounts to dismissal, regardless of any showing of prejudice by the lack of notice. Dismissal is, of course, "an extraordinary remedy," Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 2009), and the Court will not presume that it is the intended remedy for a technical statutory violation without clear guidance from Congress. Cf. Passarell v. Glickman, No. 95-2122, 1997 WL 118407 at *3 (D.D.C. Mar. 6, 1997) (finding that, despite a statutory right to a decision on disaster benefits within thirty business days, the failure to get such a decision did not entitle the plaintiffs to automatically receive those benefits). General Medicine has cited no case supporting its contention that it is entitled to dismissal. Given the lack of guidance from Congress, the Court will not take action that is tantamount to dismissal.

General Medicine would have a stronger argument that dismissal is an appropriate remedy if it were able to show that it had been prejudiced by the lack of notice. However, as the Council correctly determined, it has failed to do so. General Medicine only offers vague allegations of prejudice in this Court, contending that it was "denied the opportunity to influence [the

extrapolation] decision." Pl. Mot. at 9.  But General Medicine has not shown that the outcome of

the process would have been different had it been given that opportunity.  Further, General

Medicine has had the opportunity to present its arguments in over a decade of litigation regarding

these claims, and thus it cannot be said that it has been wholly without opportunity to argue its

case.  Cf. Jefferson v. Jefferson City Public School Sys., 360 F.3d 583, 587-588 (6th Cir. 2004)

("If satisfactory state procedures are provided in a procedural due process case, then no

constitutional deprivation has occurred despite the injury.").

For these reasons, the Court denies this aspect of General Medicine's motion.

**B. Failure to Issue Subpoenas**

General Medicine also argues that the ALJ erred in not requiring the QIC to obtain the

complete medical records of the beneficiaries.  According to General Medicine, the QIC failed to

obey the ALJ's order to obtain all medical records.  The ALJ proceeded in the absence of the full

medical records, and the Council ultimately did so as well.  General Medicine seeks a remand in

order to obtain full medical records.  The Government argues that the ALJ and the Council

correctly determined that the medical records were not necessary to review the individual claims,

and that the additional records are not new or material.

To begin, General Medicine seems to overstate the order made by the ALJ.  General

Medicine points to the ALJ's May 11, 2009 order of remand, see 5/11/2009 Order, Ex. D to Mot.

for Summ. J. (Dkt. 60-5).  In that order, the ALJ notes that "records are missing" and, for that and

other reasons, ordered that "this case is hereby remanded to the QIC to . . . obtain all relevant

medical records for all of the Beneficiaries."  Id. at 3.  This does not equate to, as General Medicine

contends, an order that the QIC subpoena all relevant medical records.

Further, General Medicine has not met its burden to show that a remand is appropriate, as it has not shown that the evidence here is new or material. In <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit considered a request for a remand to the ALJ. The court denied that request, stating the general principle that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." <u>Foster</u>, 279 F.3d at 357. Evidence is only material if "there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." <u>Id.</u>

Here, there is no dispute that the evidence sought existed at the time of the hearing in front of the ALJ, and thus the question becomes whether it was available. General Medicine claims that the evidence is not available because the QIC did not subpoena it. The plaintiff in <u>Foster</u> similarly blamed the administrative process for an incomplete record. <u>Id.</u> ("Foster claims that the ALJ's failure to respond to her requests for additional testing was the reason for her failure to acquire and present the evidence."). In denying the claim, the court there noted that "[t]he burden of providing a complete record . . . rests on the claimant," while also noting that the plaintiff had over a year and a half to compile new evidence between the remand and the hearing in front of the ALJ. <u>Id.</u> So too here. It has been nearly a decade since the initial remand for additional evidence, and General Medicine still blames the QIC for failure to obtain it. Because the burden of providing a complete record rests with General Medicine, it cannot succeed in its argument blaming actors within the system for an incomplete record. Thus, this aspect of the motion is denied.

**IV. CONCLUSION**

For these reasons, the Court denies Plaintiff's motion for summary judgment.[1]  General

Medicine shall show cause within fourteen days why judgment should not be entered in favor of

the Government.

        SO ORDERED.

Dated:  March 14, 2019                              s/Mark A. Goldsmith                
        Detroit, Michigan                           MARK A. GOLDSMITH
                                                    United States District Judge

---

[1] General Medicine has also filed a motion for leave to file a supplemental brief in support of its motion (Dkt. 66).  In the brief attached to that motion, General Medicine brings forth a Supreme Court case, Mach Mining, LLC v. EEOC, 135 S. Ct. 1645 (2015), in which the Court ruled that district courts have the authority to review EEOC action when it does not comply with its conciliation requirement.  The Court denies this motion, because the Supreme Court case was available when General Medicine brought its original motion.  Regardless, it is not clear how Mach Mining, in which the Supreme Court says that district courts may review EEOC action or inaction, applies in this case, in which there is no dispute that the district court has the authority to review the Council's action.